UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TODD M. JACK,

      Plaintiff,

v.                               Case No:   2:14-cv-723-FtM-38MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

      This cause is before the Court on Plaintiff Todd Michael Jack's Complaint (Doc. 1) filed on December 16, 2014.   Plaintiff is proceeding *pro se*, which is without the benefit of counsel. Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying his claim for disability and disability insurance benefits.   The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed legal memoranda in support of their positions.   For the reasons set out herein, the Court respectfully recommends that the Commissioner's decision be affirmed in part and reversed and remanded in part pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

      **I.**      **Social Security Act Eligibility, the ALJ Decision, and Standard of Review**

      **A.**      **Eligibility**

      The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve

months.   42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.
The impairment must be severe, making the claimant unable to do his previous work, or any
other substantial gainful activity that exists in the national economy.   42 U.S.C. §§ 423(d)(2),
1382(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.   Plaintiff bears the burden of
persuasion through step four, while the burden shifts to the Commissioner at step 5.   *Bowen v.
Yuckert*, 482 U.S. 137, 146, n.5 (1987).

### B.      Procedural History

On December 10, 2011, Plaintiff filed an application for disability insurance benefits,
asserting an onset date of January 18, 2011.   (Tr. at 72, 145-46).   Plaintiff's application was
denied initially on March 28, 2012, and on reconsideration on October 1, 2012.   (Tr. at 72, 81).
A hearing was held before Administrative Law Judge Stewart Goldstein on June 17, 2014.   (Tr.
at 42-65).   The ALJ issued an unfavorable decision on June 24, 2014.   (Tr. at 28-35).   On
October 15, 2014, the Appeals Council denied Plaintiff's request for review.   (Tr. at 1-3).
Plaintiff filed a Complaint (Doc. 1) in the United States District Court on December 16, 2014.
This case is ripe for review.

### C.      Summary of the ALJ's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant
has proven that he is disabled.   *Packer v. Comm'r of Social Security*, 542 F. App'x 890, 891
(11th Cir. 2013)[1] (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).   An ALJ must

---

[1] Unpublished opinions may be cited as persuasive on a particular point.   The Court
does not rely on unpublished opinions as precedent.   Citation to unpublished opinions on or
after January 1, 2007 is expressly permitted under Rule 31.1, Fed. R. App. P.   Unpublished
opinions may be cited as persuasive authority pursuant to the Eleventh Circuit Rules.   11th Cir.
R. 36-2.

determine whether the claimant:   (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform his past relevant work; and (5) can perform other work of the sort found in the national economy.   *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).   The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.   *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ found that Plaintiff met the insured status requirements through September 30, 2013.   (Tr. at 30).   At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 18, 2011 through his date last insured of September 30, 2013.   (Tr. at 30).   At step two, the ALJ found that Plaintiff has the following medically determinable impairments:   presbyopia and strabismus, citing 20 C.F.R. § 404.1521 *et seq.*   (Tr. at 31).   The ALJ found that as of the date last insured, Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work-related activities for 12 consecutive months.   (Tr. at 32).   The ALJ found that Plaintiff did not have a severe impairment or combination of impairments.   (Tr. at 32).   The ALJ concluded that Plaintiff was not under a disability at any time from the alleged onset date of January 18, 2011 through the date last insured of September 30, 2013.   (Tr. at 35).

### D.   Standard of Review

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971).   The Commissioner's findings of fact are conclusive if supported by substantial

evidence.   42 U.S.C. § 405(g).   Substantial evidence is more than a scintilla – *i.e.* the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); and *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).   The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.   *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## II.    Analysis

The issues raised by Plaintiff are not entirely clear.   The Court reviewed Plaintiff's filings, and found that Plaintiff raises the following issues:

1) Whether the ALJ erred in failing to find that Plaintiff had a severe impairment or combination of severe impairments at step two of the sequential evaluation, and whether the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.

2) Whether the Appeals Council erred in denying review when Plaintiff had submitted additional evidence.

3) Whether this action should be remanded based on the additional evidence submitted by Plaintiff to this Court.

(Doc. 19, 25).

**A. Whether the ALJ erred in failing to find that Plaintiff had a severe impairment or combination of severe impairments at step two of the sequential evaluation and whether the ALJ erred in finding that Plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible.**

Plaintiff claims that he suffers from amblyopia, strabismus, extreme bilateral myopia, post-traumatic stress disorder, torn back muscles, and hip malfunction.   (Doc. 19 at 7-8).   At step two, the ALJ found that Plaintiff had the following medically determinable impairments: presbyopia and strabismus.   (Tr. at 31).   The ALJ found that none of Plaintiff impairments singly or in combination significantly limited his ability to perform basic work-related activities for 12 consecutive months.   (Tr. at 31-32).   The Commissioner asserts that substantial evidence supports the ALJ's finding at step two that Plaintiff did not have an impairment or combination of impairments that significantly limited the ability of Plaintiff to perform basic work-related activities for 12 consecutive months.   (Tr. at 32).   Further, the Commissioner claims that substantial evidence supports the ALJ's decision that Plaintiff did not have a severe impairment or combination of impairments.   (Tr. at 32).

A plaintiff must prove that he is disabled.   *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005).   For disability insurance benefits, a plaintiff must show eligibility for benefits on or before his date last insured.   *Id.* (citing 42 U.S.C. § 423(a)(1)(A)).   In the instant case, Plaintiff must show his eligibility for benefits on or before his date last insured of September 30, 2013.

A person is considered disabled and entitled to disability benefits if he does not have the ability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §

423(d)(1)(A).   At step two of the sequential evaluation, the ALJ determines whether any of the impairments are either severe or not severe.   *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986).   To determine if an impairment is severe, an ALJ must determine whether the impairment significantly limits a plaintiff's physical or mental ability to do basic work activity. *Gray v. Comm'r of Soc. Sec.*, 426 F. App'x 751, 752 (11th Cir. 2011) (citing *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) (citing 20 C.F.R. § 404.1520(c))).   A plaintiff's burden at step two is mild.   *McDaniel*, 800 F. 2d at 1031.   "An impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Id.*; *Delia v. Comm'r of Soc. Sec.*, 433 F. App'x 885, 887 (11th Cir. 2011); *Gray*, 426 F. App'x at 754.   "Step two is a threshold inquiry that 'allows only claims based on the most trivial impairments to be rejected.'"   *Gray*, 550 F. App'x at 853 (citing *McDaniel*, 800 F. 2d at 1031).

Even though Plaintiff has the burden at step two of the sequential evaluation, a hearing before an ALJ is not an adversary proceeding and, thus, an ALJ has to the "basic obligation to develop a full and fair record."   *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).   The obligation to develop the record exists whether a claimant is represented by counsel or not.   *Cowart*, 662 F.2d at 735.

### 1.    Vision

Plaintiff alleges that he is disabled due to his vision impairments.   Plaintiff claims that he is blind in his right eye, has diminished night vision, and is stressed and confused when using sight for major life activities.   (Doc. 19 at 13).   The ALJ considered the vision examinations of Julie Vendittis, O.D. and Bruce Kennan, O.D.   (Tr. at 31).   The ALJ found that Plaintiff had corrected visual acuity of 20/70 in the right eye and 20/40 in the left eye.   (Tr. at 31).   The ALJ

reviewed Dr. Vendittis' report, that indicated on March 9, 2011, Plaintiff had unaided vision of 20/400 in his right eye and 20/40 in his left eye.   (Tr. at 33).   The ALJ noted that Dr. Vendittis found that Plaintiff's corrected vision was 20/25-1 in his right eye and 20/25+3 in his left eye. (Tr. at 33).   The ALJ noted that Dr. Vendittis determined Plaintiff's internal and external ocular health was within normal limits, and that Plaintiff was not visually disabled.   (Tr. at 33).   The ALJ recognized that on May 6, 2013, Dr. Vendittis completed a form for New York Life Insurance Company.   (Tr. at 33).   The ALJ found that the form indicated that:   (1) Plaintiff was visually disabled; (2) had reduced visual acuity in the right eye of 20/70; (3) the treatment provided was new glasses; and (4) that Plaintiff was visually disabled.   (Tr. at 33).   The ALJ gave no weight to the comment by Dr. Vendittis that Plaintiff was visually disabled because it contradicted Dr. Vendittis' previous statement that Plaintiff was not visually disabled.   (Tr. at 33).

The ALJ also reviewed Bruce Keenan, O.D.'s reports (Tr. at 33).   The ALJ noted that Dr. Keenan found that on March 21, 2013, Plaintiff's uncorrected vision was 20/200-1in the right eye and 20/50 in the left eye.   (Tr. at 33).   The ALJ then noted that Dr. Keenan found Plaintiff's vision with correction to be 20/70 in the right eye and 20/40 in the left eye.   (Tr. at 33).   The ALJ noted that Dr. Keenan diagnosed Plaintiff with presbyopia, strabismus, and vitreous floaters.   (Tr. at 33).   The ALJ also reviewed a similar statement by Dr. Keenan for New York Life Insurance on March 20, 2013.   (Tr. at 34).   The ALJ found that in that form, Dr. Keenan:   (1) found Plaintiff had reduced visual acuity of 20/70 in his right eye; (2) 20/40 in his left eye, and strabismus; (3) responded both "yes" and "no" as to whether Plaintiff was able to work at that time; (4) responded "yes" and "no" as to whether Plaintiff would need any type of modification or accommodation to enable Plaintiff to work at that time; (5) found Plaintiff would

need good lighting and larger print size to enable him to work; and (6) found Plaintiff to be visually disabled.   (Tr. at 34).   The ALJ gave no weight to Dr. Kennan's report because it contained inconsistencies in responses to questions as to whether Plaintiff was able to work, and as to any accommodations or modifications needed to allow Plaintiff to work.   (Tr. p. 34). Further, Dr. Keenan's initial evaluation contradicted the New York Life Insurance form by initially finding Plaintiff not to be visually disabled, but later in the New York Life Insurance form finding Plaintiff to be visually disabled.   (Tr. 33-34).

The ALJ determined that Plaintiff did not have an impairment or combination of impairments that significantly limited his ability to perform basic work activities.   The ALJ cited to the proper legal standard at step two of the sequential evaluation.   The ALJ reached his conclusion at step two by considering all of the symptoms that were consistent with the objective medical evidence and other evidence, and considering Plaintiff's activities of daily living.   (Tr. at 32-33).   The ALJ found Plaintiff has presbyopia and strabismus, with corrected vision of 20/70 in the right eye and 20/40 in the left eye.   (Tr. at 34).[2]   The ALJ found no other medically determinable physical or mental impairments from Plaintiff's alleged onset of disability of January 18, 2011 through his date last insured of September 30, 2013.   (Tr. at 34).   The ALJ concluded that "[d]espite his reduced vision for which eyeglasses are prescribed, Mr. Jack admittedly can take care of his personal needs, prepare simple meals for himself, perform light household chores, shop for himself, handle his financial affairs, read for recreation (using large print books), go to the library, attend church, and participate in church-sponsored activities." (Tr. at 34).   The ALJ found Plaintiff's limited treatment for his vision impairments along with

---

[2]   The ALJ stated that Plaintiff had vision of 20/70 in the right eye and 20/40 in the right eye, which appears to be a typographical error.   (Tr. at 34).

the medical findings and Plaintiff's admitted activities of daily living and functional capabilities diminish plaintiff's credibility regarding the frequency and severity of his symptoms and the extent of his limitations.   (Tr. at 34).   The ALJ also relied on and gave great weight to the State agency medical consultants' opinions showing that Plaintiff did not have a severe medically determinable impairment.   (Tr. at 34).

The Court reviewed both Dr. Vendittis' and Dr. Kennan's records.   On March 9, 2011, Dr. Vendittis saw Plaintiff for an optical examination.   (Tr. at 270-73, 284).   Dr. Vendittis determined that Plaintiff had 20/25-1 vision in the right eye and 20/25+3 in the left eye.   (Tr. at 273, 284).   Dr. Vendittis diagnosed Plaintiff with myopia, "CMA," and presbyopia.   (Tr. at 272-73).   Dr. Vendittis found that Plaintiff "is not visually disabled."   (Tr. at 270, 273, 284). On May 6, 2013, Dr. Vendittis completed a Medical Provider's Statement for New York Life Insurance Company for Plaintiff.   (Tr. at 280-81).   Dr. Vendittis found that Plaintiff had reduced visual acuity in the right eye of 20/70.   (Tr. at 280).   Dr. Vendittis determined that no accommodation could be made to enable Plaintiff to work, that Plaintiff was unable to work, and that Plaintiff was disabled.   (Tr. at 281).

Dr. Keenan examined Plaintiff on March 21, 2013.   (Tr. at 286).   Dr. Keenan found Plaintiff had 20/70 vision in his right eye, and 20/40 in his left eye.   (Tr. at 286).   On March 28, 2013, Dr. Keenan completed a Medical Provider's Statement for New York Life Insurance.   (Tr. at 282-83).   Dr. Keenan responded to the question of whether Plaintiff could work by answering "yes" and "no" without further explanation.   (Tr. at 283).   Dr. Keenan noted that Plaintiff would need job modifications or accommodations of good lighting and larger print size to be able to work.   (Tr. at 283).   Dr. Keenan noted that Plaintiff has reduced visual acuity from a prior trauma, and was diagnosed with strabismus, which may have been congenital.   (Tr. at

283).   Dr. Keenan found Plaintiff could endorse checks and direct and use the proceeds from the checks.   (Tr. at 283).

The law provides that Plaintiff's burden at step two of the sequential evaluation is mild. *See McDaniel*, 800 F. 2d 1031.   The Court must determine if Plaintiff's visual impairments significantly limit Plaintiff's ability to do basic work activity, keeping in mind that only the most trivial impairments will be rejected at step two.   *See Gray*, 426 F. App'x at 752, 853.   For the Court to find an impairment not severe, the Court must find that its effect would be so slight or minimal that it would not clearly interfere with Plaintiff's ability two work.   *Id*.

The ALJ acknowledged that Plaintiff has a visual impairment.   Plaintiff's visual impairment includes presbyopia and strabismus, and his vision is limited in his right eye to 20/70 and in his left eye to 20/40 with correction.   To determine that this visual impairment is not severe, the ALJ relied heavily on Plaintiff's activities of daily living, his limited medical treatments, and the State agency medical consultants' opinions.

The Court recognizes that Plaintiff takes care of his personal needs, prepares simple meals, does light household chores, shops, handles finances, reads using large print books, goes to the library, and attends church as well as other activities.   Included in Plaintiff's daily activities was that Plaintiff can read.   However, he is limited to large print books.

The ALJ also relied on the State agency medical consultants' opinions.   These opinions were completed on March 28, 2012 and August 16, 2012.   (Tr. at 66-80).   These opinions used Dr. Vendittis' visual assessment of 20/25-1 in the right eye and 20/25+3 in the left eye.   These opinions were completed prior to Dr. Keenan's examination of March 21, 2013.   Dr. Keenan found Plaintiff to have vision of 20/70 in the right eye and 20/40 in the left eye.   The ALJ accepted Dr. Keenan's visual limitation in his opinion, which is more severe than the visual

assessment used by the State agency medical consultants.   Nonetheless, the ALJ gave great
weight to the State agency medical consultants' opinion that used a different assessment
evaluation.   The ALJ also gave little weight to Dr. Keenan's medical provider statement for
New York Life Insurance Company.   (Tr. at 282-83).   The Court recognizes that Dr. Keenan
answered yes and no to some questions.   However, he also set forth modifications or
accommodations that Plaintiff would need to be able to work, such as good lighting and larger
print size.   (Tr. at 283).   The visual limitations cause Plaintiff to have certain difficulties in his
capacity to see.   Plaintiff has shown through objective medical evidence that these limitations
are not so trivial that they should be rejected at step two of the sequential evaluation.   The ALJ
did not develop the record to the extent that he could find Plaintiff's visual limitations were so
slight an abnormality or that their effect would be so minimal that it would not interfere with
Plaintiff's ability to work.   Thus, the Court finds that the ALJ erred in failing to find that
Plaintiff's visual limitations were not severe at step two of the sequential evaluation.

## 2.  Post-Traumatic Stress Disorder; Torn Back Muscles; Hip Malfunction

Plaintiff alleges that he suffers from post-traumatic stress disorder, torn back muscles,
and hip malfunction.   (Doc. 19 at 14).   The ALJ did not find that any of these conditions were
medically determinable impairments and did not list them at step two of the sequential
evaluation.   The ALJ noted that Plaintiff alleges he suffers from post-traumatic stress disorder,
but found that Plaintiff admitted that he was never treated for this condition.   (Tr. at 31).   The
ALJ referred to the testimony at the hearing and Plaintiff's claim that he was allegedly diagnosed
in 2005 by a U.S. Navy doctor with post-traumatic stress syndrome, and claimed that it was later
confirmed by psychologist and people at the church he attends.   (Tr. at 31).   The ALJ asserted
that he reviewed all of Plaintiff's medical evidence before him and there was no medical

evidence reporting any signs or symptoms of a mental impairment or any related treatment during the relevant period of time that supports Plaintiff's allegation that he suffers from post-traumatic stress syndrome.   (Tr. p. 31).   Absent any objective medical evidence to support Plaintiff's allegations that he suffers from post-traumatic stress syndrome, Plaintiff has failed to show that his alleged impairment of post-traumatic stress syndrome would interfere in any way with Plaintiff's ability to do basic work activity.   *See McDaniel*, 800 F.2d 1031.   Therefore, the Court finds that the ALJ did not err in failing to list post-traumatic stress syndrome as a severe impairment at step two of the sequential evaluation.

Plaintiff alleges that he suffers from torn lumbar muscles, torn connective soft tissues, and hip malfunctions.   (Doc. 19 at 13).   Plaintiff claims that he suffers from a hip ball-joint dislocation that causes extreme pain and a lack of balance and coordination.   (Doc. 19 at 13). The ALJ noted that Plaintiff claimed he suffered from thigh and lower back pain with right-sided muscle spasms that increased with walking and lifting.   (Tr. at 31).   The ALJ noted that Plaintiff took Motrin, aspirin, and Aleve for the pain.   (Tr. at 31).   The ALJ reviewed Dwight Kemp, D.O.'s records.   (Tr. at 31).   The ALJ noted that Dr. Kemp found Plaintiff to have a full range of right hip, knee, and ankle motion.   (Tr. at 31).   The ALJ found that Dr. Kemp diagnosed Plaintiff with inflammation of a ligament or tissue and prescribed physical therapy. (Tr. at 31).   After a brief period of physical therapy, the ALJ noted that Plaintiff was discharged reporting no thigh or hip pain, and only mild upper back pain.   (Tr. at 31).

The Court reviewed Dr. Kemp's records.   (Tr. at 233-235).   Plaintiff visited Dr. Kemp on April 25, 2011, for pain extending on the lateral aspect of his right thigh to knee area.   (Tr. at 233).   Plaintiff denied back pain.   (Tr. at 233).   Dr. Kemp diagnosed Plaintiff with "IT band syndrome, enthesopathy, and possible other deeper anomalies such as soft tissue in nature."   (Tr.

at 233).   Dr. Kemp prescribed physical therapy.   (Tr. at 233).   Plaintiff attended physical

therapy from May 11, 2011 through May 24, 2011.   (Tr. at 236-57).   At one of his last physical

therapy sessions, Plaintiff reported no thigh or hip pain, and only mild pain in his upper lumbar

spine.   (Tr. at 255).   Plaintiff failed to meet his burden to show that he was disabled prior to his

date last insured for torn lumbar muscles, torn connective soft tissues, and hip malfunctions.

Plaintiff failed to show any objective medical evidence to support Plaintiff's allegations that he

suffers or suffered from these impairments for a period of time lasting or expected to last for a

continuous period of not less than 12 months.   Dr. Kemp first evaluated Plaintiff in April 2011

and Plaintiff reported no pain from his injuries after physical therapy in May 2011.   Plaintiff

failed to show that his alleged impairments of torn lumbar muscles, torn connective soft tissues,

and hip malfunctions would interfere in any way with Plaintiff's ability to do basic work activity.

*See McDaniel*, 800 F.2d 1031.   Thus, the Court finds that the ALJ did not err in failing to list

torn lumbar muscles, torn connective soft tissues, and hip malfunctions as medically

determinable impairments or as severe impairments at step two of the sequential evaluation.

**B.  Whether the Appeals Council erred in denying review when Plaintiff had
submitted additional evidence.**

Plaintiff asserts that the Appeals Council erred in denying Plaintiff's request for review.

Plaintiff submitted additional evidence to the Appeals Council.   The additional medical

evidence consisted of an evaluation of Plaintiff by Shawn Slattery, O.D. on September 10, 2014.

(Tr. at 13-14).   The Appeals Council denied Plaintiff's request for review for the following

reasons:   "We also looked at records from Shawn Slattery OD dated September 10, 2014.   The

Administrative Law Judge decided your case through June 24, 2014.   This new information is

about a later time.   Therefore, it does not affect the decision about whether you were disabled

beginning on or before June 24, 2014."   (Tr. at2).   One rule that the Appeals Council applied

stated that if it received "new and material evidence and the decision is contrary to the weight of all the evidence now in the record" then it would have granted review. (Tr. p. 1).

A claimant is generally permitted to present new evidence at each stage of his administrative process. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007); 20 C.F.R. § 404.900(b). Evidence submitted for the first time to the Appeals Council is determined under a Sentence Four analysis. *Id.* An Appeals Council must consider new and material evidence that "'relates to the period on or before the date of the administrative law judge hearing decision' and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" *Id.* (20 C.F.R. §§ 404.970(b), 416.1470(b)). New evidence is considered material and, thereby, warranting a remand if "'there is a reasonable possibility that the new evidence would change the administrative outcome.'" *Id.*

The additional evidence submitted to the Appeals Council consisted of Dr. Slattery's evaluation. (Tr. at 13-14, 17-18). Dr. Slattery noted that Plaintiff's last vision examination was in 2011. (Tr. at 13). Dr. Slattery determined that with correction Plaintiff had 20/50 vision in his right eye and 20/70 in his left eye. Dr. Slattery's report did not contain any information showing that his present evaluation related back to a time period prior to the date of the ALJ's decision of June 24, 2014.

The report from Dr. Slattery does not contain any information to show that it was chronologically relevant to the time period on or before the date of the ALJ's decision, which was June 24, 2014. Further, Dr. Slattery's findings were largely consistent with Dr. Vendittis and Dr. Keenan's evaluations, and Plaintiff failed to show that there was a reasonable possibility that this new information from Dr. Slattery would change the administrative outcome.

Therefore, the Court finds that the Appeals Council did not err in denying Plaintiff's request for review.

   C.   **Whether this action should be remanded based on the additional evidence submitted by Plaintiff to this Court.**

Plaintiff attached to his Memorandum in Support of Their [sic] Complaint (Doc. 19) the records of an examination by Rachid Aouchiche, M.D. conducted on October 1, 2014.   (Doc. 19 at 30-33).   Plaintiff also attached documents from his service in the Navy to his Response to Defendant's Memorandum of 7/31/15 (Doc. 25).   These documents were submitted to this Court and were not submitted during the administrative process.

New additional evidence that was presented to the Court and not to the administrative agency must be considered under a Sentence Six analysis.   *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1261 (11th Cir. 2007).   Sentence Six provides a federal court "with the power to remand the application for benefits to the Commissioner for the taking of additional evidence upon a showing 'that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.'" *Id.* (quoting 42 U.S.C. § 405(g)).

Sentence Six remands are "entirely different" from Sentence Four remands.   *Id.* at 1267. Sentence Six allows a claimant the opportunity to present new and material evidence to the district court that was not available to the Commissioner or the Appeals Council.   *Id.*   The evidence, must be new and material and not a part of the administrative record, and the claimant must show good cause why this material was not incorporated in the administrative record.   *Id.*   Therefore, the new medical evidence attached to the memorandum in Support of Their Complaint (Doc. 19) and the Response to Defendant's Memorandum of 7/31/15 (Doc. 25) must be considered under a Sentence Six analysis.

> To remand under sentence six, the claimant must establish:   1) that there is new, non-cumulative evidence; 2) that the evidence is material—relevant and probative so that there is a reasonable possibility that it would change the administrative result; and 3) there is good cause for failure to submit the evidence at the administrative level.   *See Jackson*, 99 F.3d at 1090-92; *Cannon v. Bowen*, 858 F.2d 1541, 1546 (11th Cir. 1988); *Smith v. Bowen*, 792 F.2d 1547, 1550 (11th Cir. 1986); *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986); *Keeton v. Dept. of Health & Human Serv.*, 21 F.3d 1064, 1068 (11th Cir. 1994).   A sentence-six remand may be warranted even in the absence of an error by the Commissioner if new, material evidence becomes available to the claimant.   *Jackson*, 99 F.3d at 1095.

*Delker v. Comm'r of Soc. Sec.*, 658 F. Supp. 2d 1340, 1366-67 (M.D. Fla. 2009)

Plaintiff attached Dr. Aouchiche's medical records of October 2, 2014 to support his diagnosis of amblyopia and strabismus.   (Doc. 19 at 17).   Dr. Aouchiche found that Plaintiff has 20/40 vision in the right eye and 20/-30 in the left eye.   Plaintiff asserts that Dr. Aouchiche determined that the cause of Plaintiff's amblyopia was not due to an optic nerve problem, but due to a brain defect.   (Doc. 19 at 17).   Dr. Aouchiche provided a referral to a brain specialist. However, according to Plaintiff, the Lion's Club refused to provide funding for this specialist as it was outside of their mission to assist in vision problems.   Dr. Aouchiche's evaluation was conducted after the date of the ALJ's decision of June 24, 2014.   Dr. Aouchiche's report does not indicate that it relates to the time period on or before the ALJ's decision.   Further, Dr. Aouchiche's report provides similar vision limitations to the reports of record.   Plaintiff has failed to show that Dr. Aouchiche's report was relevant, probative, or material evidence.

Plaintiff also attached Navy records.   These records included the following:   (1) a Memorandum dated April 25, 2002 from Plaintiff to the Commander of Navy Personnel (Doc. 25-1 at 1-2); (2) Memorandum from Plaintiff to the Commander of the Navy Personnel dated October 3, 2005 (Doc. 25-1 at 3); (3) letter from the Commander of Navy Personnel to Plaintiff dated November 22, 2006 (Doc. 25-1 at 4); (4) Memorandum from Plaintiff to Commander of Navy Personnel dated April 25, 2002 (Doc. 25-1 at 6-7); and (5) Fitness Reports and Counseling Records

from the Navy dated April 15, 2000, and March 3, 2002. (Doc. 25-1 at 8-11).   All of these records were prepared years prior to Plaintiff's onset date and years prior to the ALJ's decision.   Plaintiff failed to show that these records are new and failed to show good cause why there were not submitted during the administrative process.   These Navy records were from the years 2000 through 2006, which were at least seven years prior to the ALJ's decision, and at least four years prior to the alleged onset date of January 18, 2011.   These records do not substantiate that Plaintiff was disabled during the relevant time period and, as such, these documents are not material. Further, Plaintiff failed to show good cause why these records were not submitted at the administrative level.   A remand pursuant to Sentence Six is not warranted.

## CONCLUSION

Therefore, it is **RESPECTFULLY RECOMMENDED** that pursuant to §205(g) of the Social Security Act, 42 U.S.C. §405(g), the Decision of the Commissioner be:

1) Reversed and Remanded in part for the Commissioner to reconsider Plaintiff's impairments to determine if Plaintiff has a medically determinable impairment that is severe or a combination of impairments that are severe, and to continue in the sequential evaluation, if appropriate.

2) Affirmed in part as to the remaining issues raised.

Respectfully recommended in Chambers in Ft. Myers, Florida on December 30, 2015.


MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE


**NOTICE TO PARTIES**

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions.   A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation.   *See* 11th Cir. R. 3-1.


Copies furnished to:

Counsel of Record
Unrepresented Parties